Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| ESPACIO RESIDENTIAL, LLC<br><br>Recurrido<br><br><br>V.<br><br><br>ALTURAS DEL BOSQUE, S.E., Y OTROS<br><br>Peticionarios | TA2025CE00473 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV03523<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca, Ejecución de Resolución Administrativa |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 9 de diciembre de 2025.

El 18 de septiembre de 2025, compareció ante este Tribunal de Apelaciones, Alturas del Bosque, S.E. (Alturas del Bosque) y LEMA Developers and Associates, S.E. (adelante, LEMA y en conjunto la parte peticionaria) por medio de recurso *Certiorari*. Mediante este, nos solicita que revisemos la *Resolución* emitida y notificada el 21 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan. En virtud del aludido dictamen, el foro *a quo* declaró No Ha Lugar la *Solicitud de Desestimación* instada por la parte peticionaria.

Por los fundamentos que adelante se exponen, se expide el recurso de *Certiorari*, se revoca el dictamen recurrido y se desestima la *Demanda* en cuanto a la parte peticionaria.

### I

Los hechos que propiciaron la controversia de epígrafe se remontan a una *Demanda* sobre cobro de dinero y ejecución de

hipoteca; ejecución de resolución administrativa, presentada por Espacio Residential, LLC (en adelante, Espacio Residential o parte recurrida), en contra de la parte peticionaria, el señor Luis F. Nieves Morillo (en adelante, señor Nieves Morillo), la señora María L. Ramírez Girona (en adelante, señora Ramírez Girona), la Sociedad Legal de Gananciales compuesta por ambos y otras partes codemandadas.

En apretada síntesis, la parte recurrida alegó en su *Demanda* que el 31 de marzo de 2004, los señores Nieves Morillo y Ramírez Girona, adquirieron el apartamento residencial 701 ubicado en el Condominio Alturas del Bosque en San Juan, Puerto Rico. El aludido apartamento fue desarrollado por Alturas del Bosque y LEMA fungió como gerente general en la construcción, y participó en la promoción del aludido proyecto. Para la adquisición del apartamento en cuestión, el 31 de marzo de 2004, los señores Nieves Morillo y Ramírez Girona realizaron un préstamo hipotecario con HF Mortgage Corporation, el cual fue posteriormente adquirido por Doral Bank. Como garantía de tal préstamo, los codemandados Nieves Morillo y Ramírez Girona otorgaron la escritura de compraventa número 173, en la misma fecha y ante el mismo notario, mediante la cual constituyeron hipoteca sobre el inmueble sito en Alturas del Bosque, Apartamento 701, San Juan, Puerto Rico (en adelante "Apartamento 701").

El 11 de julio de 2008, los señores Nieves Morillo y Ramírez Girona (querellantes) instaron una *Querella* ante el Departamento de Asuntos al Consumidos (en adelante el DACo), por vicios de construcción, en la cual peticionaron que el ente administrativo declarara la ruina funcional del mencionado apartamento y resolviera el contrato. La *Querella*, fue instada en contra de Alturas Del Bosque; LEMA; Ossam Construction, Inc., y Doral Bank, como el acreedor hipotecario. En la *Querella*, los querellantes adujeron

que, el Apartamento 701 contenía vicios de construcción que hacían de la propiedad una ruina funcional, no apta para uso residencial. En específico, señalaron que el Apartamento 701 sufría múltiples infiltraciones de aguas negras por las paredes, receptáculos eléctricos, fregaderos, entre otros, y que como consecuencia, se crearon condiciones insalubres que impidieron el uso y disfrute del inmueble.

Según surge de la *Demanda*, luego de los trámites de rigor, el 17 de diciembre de 2012, notificada el 29 de agosto de 2014, el DACo, emitió *Resolución* en la cual accedió a lo peticionado y declaró al apartamento en cuestión, ruina funcional. Consecuentemente, dictaminó la resolución del contrato de compraventa y la devolución de las contraprestaciones. Asimismo, determinó la resolución del contrato de hipoteca.[1]

En desacuerdo con dicha determinación, la parte querellada acudió ante este foro revisor, por medio de tres recursos de revisión administrativa, en el caso con designación alfanumérica KLRA201500029 consolidado con los casos KLRA201500047 y KLRA201500005. En cuanto a dichos casos, mediante *Sentencia* emitida el 30 de abril de 2018, un panel hermano dispuso lo siguiente:

> Revocamos la resolución del contrato de hipoteca. Ordenamos que, dentro del plazo de treinta días, a partir de la notificación de la presente Sentencia, los obligados a responder solidariamente, OSSAM Construction, Inc., responsable en un veinte por ciento; Alturas del Bosque S.E. y Lema Developers and Associates S.E., pagarán al señor Luis Francisco Nieves Morillo, a la señora María Luisa Ramírez Girona y a la

---

[1] En particular, el DACo dispuso, entre otras cosas, lo siguiente: ". . . . Se reconoce la ruina funcional en el apartamento 701 del querellante y se reconoce la Resolución de contrato del contrato de compraventa y de hipoteca. Dentro del plazo de veinte (20) días a partir de la fecha de notificación de la presente Resolución, la querellada Alturas del Bosque S.E., Arturo Madero Arboleda, Lema Developers and Associates S.E., y Doral Bank, solidariamente, relevarán al querellante Luis Francisco Murillo y María Luisa [Ramírez] Girona de la obligación del pago de hipoteca que afecta el apartamento [701] en el Condominio Alturas del Bosque, mediante carta de la institución bancaria correspondiente acreditando el relevo de pago, rembolsándoles todo lo pagado en gastos de cierre, depósito, y todas las mensualidades de principal e intereses. . . ." Véase, ANEJO 2 – Resolución administrativa del DACO. 11.

Sociedad Legal de Gananciales constituida entre ellos, la totalidad de la obligación correspondiente a la hipoteca que grava el apartamento 701 en el Condominio Alturas del Bosque, conforme con los términos y condiciones acordados al otorgar la correspondiente escritura, incluyendo el reembolso de todo lo pagado en gastos de cierre, depósitos y todas las mensualidades de principal e intereses".

En su *Demanda*, Espacio Residential afirma que es la entidad con derecho a exigir el cumplimiento del instrumento por ser su actual tenedor, cuya copia es fiel y exacta de su original y el que está disponible para ser inspeccionado por el Tribunal y la parte demandada si así lo solicita. Alegó ante el foro primario que sus esfuerzos para lograr que los demandados satisfagan la deuda solidaria han resultado infructuosos, por lo que no ha tenido más alternativa que proceder a su cobro por la vía judicial, junto con la ejecución de la garantía hipotecaria constituida.

De igual manera, Espacio Residential sostuvo que conforme a lo acordado, al 11 de abril de 2024, la parte demandada le adeudaba las siguientes sumas: $173,685.74 de principal; intereses en la cantidad de $156,289.48, los cuales se acumulan mensualmente al 5.50% desde el 1 de diciembre de 2007 hasta el saldo total de la deuda; cargos por mora en la cantidad de $4,707.58, los cuales continúan acumulándose hasta el saldo total de la deuda; más la suma de $18,345.00 por concepto de honorarios de abogado. Añadió que también se adeudaban las sumas de dinero por concepto de contribuciones, primas de seguro hipotecario y riesgo, las cuales continúan acumulándose hasta el saldo total de la deuda, así como de cualesquiera otras cantidades pactadas en la escritura de hipoteca, incluyendo $13,717.72 por concepto de adelantos a la cuenta de reserva y $8,215.61 por concepto de balances recobrables. Por lo cual, le solicitó al foro *a quo* que ordenara el pago a Espacio Residential de las sumas aludidas.

El 31 de julio de 2024, la parte peticionaria presentó la *Moción de Desestimación bajo la Regla 10.2(5) de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. V, R.10.2(5), por Dejar Exponer una Reclamación que Justifique la Concesión de un Remedio.* Por medio de su moción, señaló que, mediante la *Resolución* de DACo fue creado un vínculo obligacional entre la parte peticionaria y los señores Nieves Morillo y Ramírez Girona, del cual Doral ni Espacio Residential formaban parte. Sostuvo que, Espacio Residential no era acreedora de la parte peticionaria en virtud de la *Resolución* del DACo, por lo que, no tenía legitimación activa para reclamar las obligaciones fijadas en ella a favor de terceros. Aseguró que, tanto de las alegaciones y de la *Resolución* del DACo surgía que Espacio Residential nunca fue reconocida como acreedora de la parte peticionaria, por lo que, aun tomando como ciertas las alegaciones de la *Demanda*, esta no presentaba una reclamación en contra de la parte peticionaria que justificara la concesión de un remedio. Asimismo, añadió que, respecto a la acción de cobro de dinero y ejecución de hipoteca en virtud del préstamo hipotecario, de las alegaciones de la *Demanda* y del pagaré hipotecario, no surgía que la parte peticionaria fuera la deudora o garante responsable de satisfacer la deuda evidenciada por el aludido pagaré. Aseguró que, los únicos deudores que surgían del pagaré eran los señores Nieves Morillo y Ramírez Girona. Explicó que, de la *Demanda* y de los documentos que la acompañaban no surgía un elemento *sine qua non* de cualquier reclamación de cobro de dinero, es decir, establecer que la persona a la que se le reclame el pago es, en efecto, la deudora de la obligación. Conforme a ello, arguyó que, la acción en cobro de dinero y ejecución de hipoteca presentada en su contra carecía de legitimación activa y por tanto, debía ser desestimada.

En respuesta, el 21 de agosto de 2024, la parte recurrida presentó *Oposición a Moción de Desestimación*.

El 21 de julio de 2025, la primera instancia judicial emitió la *Resolución* cuya revisión nos atiene. En virtud de esta, declaró No Ha Lugar la solicitud de la parte peticionaria. Razonó, además que, a pesar de que el remedio se dirigía a los señores Nieves Morillo y Ramírez Girona expresamente, ello no significaba que el reclamo de Espacio Residential fuera inválido o que le despojara de legitimación para la acción instada judicialmente entre todos los demandados. Finalmente dispuso:

> A tenor con lo antes expuesto, se declara **No Ha Lugar** la *Solicitud de Desestimación* presentada el 31 de julio de 2024 por Alturas del Bosque y LEMA. En consecuencia, se ordena la continuación de los procedimientos a tenor con lo aquí resuelto.

En desacuerdo, el 4 de agosto de 2025, la parte peticionaria presentó *Moción de Reconsideración*. El 18 de agosto de 2025, la parte recurrida presentó *Réplica a Moción de Reconsideración*.

El foro *a quo* emitió *Orden* el 19 de agosto de 2025, notificada el 20 de agosto de 2025, en la que dispuso lo siguiente:

> **ORDEN-NHL Y SEÑALAMIENTO DE VISTA**
>
> EVALUADA LA MOCIÓN DE RECONSIDERACIÓN DE LOS CODEMANDADOS LEMA DEVELOPERS Y ALTURAS DEL BOSQUE A LA LUZ DE LA RÉPLICA DE LA PARTE DEMANDANTE Y EL DERECHO APLICABLE, SE DECLARA **NO HA LUGAR**.
>
> EL TRIBUNAL ACOGE LOS FUNDAMENTOS DE DERECHO EXPUESTOS EN LA RÉPLICA POR CONSIDERARLOS CORRECTOS Y EN CONJUNTO CON LOS EXPUESTOS EN LA RESOLUCIÓN DE 21 DE JULIO DE 2025 (ENTRADA #73 EN SUMAC), REITERAMOS NUESTRO DICTAMEN.
>
> SE ORDENA LA CONTINUACIÓN DE LOS PROCEDIMIENTOS, SEÑALANDO VISTA PROCESAL EL **3 DE SEPTIEMBRE DE 2025, A LAS 9:00 A.M., DE MANERA PRESENCIAL**.

Aún inconforme, la parte peticionaria acudió ante este foro revisor mediante recurso de *Certiorari*, donde esgrimió los siguientes señalamientos de error:

A.  ERRÓ EL TPI AL CONCLUIR QUE LA PARTE RECURRIDA TIENE LEGITIMACIÓN PARA EJECUTAR UNA RESOLUCIÓN DEL DACO CONTRA LAS PETICIONARIAS, A PESAR DE NO HABER SIDO LA PARTE FAVORECIDA CON RESPECTO A DICHAS PETICIONARIAS.

B.  ERRÓ EL TPI AL CONCLUIR QUE LA PARTE RECURRIDA TIENE UNA RECLAMACIÓN VALIDA EN EJECUCIÓN CONTRA LAS PETICIONARIAS, A PESAR DE QUE EL TRIBUNAL DE APELACIONES YA HABÍA DETERMINADO QUE LAS PETICIONARIAS NO LE TENÍAN QUE PAGAR A LA PARTE RECURRIDA.

C.  ERRÓ EL TPI AL PERMITIR QUE LA PARTE RECURRIDA, DEMANDANTE EN ESTE CASO, EJERCITE UNA RECLAMACIÓN QUE, CONFORME A LA REGLA 12.1, SOLO PUEDE SER INSTADA POR UNA PARTE DEMANDADA MEDIANTE DEMANDA CONTRA TERCERO.

D.  ERRÓ EL TPI AL TOMAR EN CONSIDERACIÓN HECHOS AJENOS A LAS ALEGACIONES CONTENIDAS EN LA DEMANDA AL MOMENTO DE EVALUAR LA PROCEDENCIA DE LA MOCIÓN DE DESESTIMACIÓN.

El 3 de octubre de 2025, la parte recurrida presentó ante este foro revisor, *Alegato en Oposición a Petición de Certiorari.*

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso ante nuestra consideración.

**II**

**A. *El Certiorari***

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020)[2]. Ahora bien, tal "discreción no opera en lo abstracto.  A esos

---

[2] Véase también, *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009).

efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones[3], dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". (citas omitidas) *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[4]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión

---

[3] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf

[4] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59, 215 DPR __ (2025).

recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Moción de Desestimación

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, faculta a la parte contra la cual se presente una alegación en su contra a presentar una moción de desestimación, por los fundamentos siguientes: 1) falta de jurisdicción sobre la materia; 2) falta de jurisdicción sobre la persona; 3) insuficiencia del emplazamiento; 4) insuficiencia del diligenciamiento del emplazamiento; **5) dejar de exponer una reclamación que justifique la concesión de un remedio**, y 6) dejar de acumular una parte indispensable. *Inmob. Baleares et al. v. Benabe et al.*, 214 DPR 1109, 1128 (2024); *Blassino, Reyes v. Reyes Blassino*, 214 DPR 823, 833 (2024); *Costas Elena y otros v. Magic Sports y otros*, 213 DPR

523, 533 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al*, 210 DPR 384, 396 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. First Bank,* 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013). La precitada regla permite a la parte demandada presentar una moción de desestimación debidamente fundamentada previo a contestar la demanda instada en su contra. *Conde Cruz v. Resto Rodríguez et. al.*, 205 DPR 1043, 1065 (2020); *Casillas Carrasquillo v. ELA*, 209 DPR 240, 247 (2022). Cuando se presentá una moción de desestimación al amparo de la Regla 10.2(5), la desestimación pretendida se refiere a los méritos de la controversia y no a los aspectos procesales del caso. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR __ (2025).

Al momento de considerar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. *Cobra Acquisitions v. Mun. Yabucoa et al*, supra, pág. 396; *Costas Elena y otros v. Magic Sports y otros*, supra, pág. 533; *Blassino, Reyes v. Reyes Blassino*, supra, pág. 833; *Casillas Carrasquillo v. ELA*, supra, pág. 247; *BPPR v. Cable Media,* supra; *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 267 (2021); *Colón Rivera et al. v. ELA*, supra, pág. 1049. Luego, le corresponde determinar si, a base de los hechos aceptados como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. *Costas Elena y otros v. Magic Sports y otros*, supra, pág. 534. Si el Tribunal entiende que no se cumple con el estándar de plausibilidad, se debe desestimar la demanda, pues no debe permitir que proceda una reclamación insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba. *Íd*. Véase, además, R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6.a ed., San Juan, Ed. LexisNexis, 2017, pág. 307.

Es por lo que, para que proceda una moción de desestimación, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor".[5] *Cobra Acquisitions v. Mun. Yabucoa et al*, supra, pág. 396; *Casillas Carrasquillo v. ELA*, supra, pág. 247; *Cruz Pérez v. Roldán Rodríguez*, supra, págs. 267-268; *BPPR v. Cable Media*, supra; *Díaz Vázquez et al. v. Colón Peña et al.,* supra, pág. 1150; *Blassino, Reyes v. Reyes Blassino*, supra, pág. 833. Bajo este criterio, procederá la desestimación de la demanda si aun interpretando la reclamación de forma liberal, no hay remedio alguno disponible en el estado de Derecho. *Íd*; *BPPR v. Cable Media,* supra.

Nuestra más Alta Curia ha reiterado que, una demanda no deberá ser desestimada a menos que la razón para solicitar el remedio no proceda bajo supuesto de derecho alguno, ni pueda ser enmendada con el propósito de subsanar cualquier posible deficiencia. *Díaz Vázquez et al. v. Colón Peña et al.,* supra, pág. 1150.

## C. *Justiciabilidad*

Como es sabido, los tribunales revisores solo podremos resolver los casos que sean justiciables *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 738 (2022); *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920 (2011). La doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando la jurisdicción de estos. Dicha doctrina nace del principio elemental de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas, que tienen un interés real en obtener un remedio judicial que haya de afectar sus relaciones

---

[5] *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 654 (2013*); López García v. López García*, 200 DPR 50, 69-70 (2018).

jurídicas. Esto es, para el ejercicio válido del poder judicial se requiere la existencia de un caso o controversia real. *Smyth, Puig v. Oriental Bank,* 170 DPR 73, 75 (2007); *Hernández, Santa v. Srio. de Hacienda,* supra, pág. 738; *Bhatia Gautier v. Gobernador,* supra, pág. 68. Según lo dispuesto por nuestro Máximo Foro, una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; **(2) una de las partes carece de legitimación activa;** (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva; o (5) se intenta promover un pleito que no está maduro. *Super Asphalt v. AFI y otros,* 206 DPR 803 (2021); *Bhatia Gautier v. Gobernador,* supra, págs. 68-69.

### D. *Legitimación Activa*

La legitimación activa ha sido definida como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante" *Íd.* pág. 69; *Ramos, Méndez v. García García,* 203 DPR 379, 394 (2019); *Hernández, Santa v. Srio. de Hacienda,* supra, pág. 739. A través de esta doctrina el demandante procura demostrarle al tribunal que su interés en el pleito es "de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia". *Sánchez et al. v. Srio. de Justicia et al.,* 157 DPR 360 (2002); *Hernández Agosto v. Romero Barceló,* 112 DPR 407 (1982); *Ramos, Méndez v. García García,* supra, pág. 394.

Para establecer legitimación activa, el promovente deberá mostrar lo siguiente: (1) que ha sufrido un daño claro y palpable; (2) que tal daño es real, inmediato y preciso, no abstracto o hipotético; (3) la existencia de una relación causal razonable entre el daño alegado y la acción ejercitada, y (4) que la causa de acción surge al

palio de la Constitución o de alguna ley.  *Sánchez et al. v. Srio. de Justicia et al.*, supra, pág. 371; *Bhatia Gautier v. Gobernador*, supra, pág. 69; *Ramos, Méndez v. García García*, supra, págs. 394-395; *Hernández, Santa v. Srio. de Hacienda*, supra, pág. 739.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

### III

En su primer señalamiento de error, la parte peticionaria sostiene que, el foro de primera instancia erró al concluir que la parte recurrida tiene legitimación para ejecutar una resolución del DACo contra las peticionarias, a pesar de no haber sido la parte favorecida con respecto a dichas peticionarias.

En su segundo señalamiento de error plantea que, erró el Tribunal de Primera Instancia al concluir que la parte recurrida tiene una reclamación válida en ejecución contra las peticionarias, a pesar de que el Tribunal de Apelaciones ya había determinado que las peticionarias no le tenían que pagar a la parte recurrida.

Como tercer señalamiento de error, la parte peticionaria aduce que, erró el foro primario al permitir que la parte recurrida ejercite una reclamación que, conforme a la Regla 12.1, solo puede ser instada por una parte demandada mediante demanda contra tercero.

Como cuarto y último señalamiento de error, la parte peticionaria asevera que erró el foro *a quo* al tomar en consideración hechos ajenos a las alegaciones contenidas en la demanda al momento de evaluar la procedencia de la moción de desestimación.

Por encontrarse intrínsecamente relacionados, discutiremos los señalamientos de error de forma conjunta.

Adelantamos que, le asiste la razón. Veamos.

Según reseñáramos, los señores Nieves Morillo y Ramírez Girona, presentaron una *Querella* ante el DACo por vicios de

construcción en contra de la parte peticionaria, Ossam Construction y Doral Bank. Más adelante, el DACo emitió *Resolución* por medio de la cual declaró Ha Lugar la *Querella*. Determinó que procedía la resolución del contrato de compraventa y la devolución de las contraprestaciones, así como la resolución del contrato de hipoteca. De igual forma, el DACo dispuso que, Alturas del Bosque y LEMA, junto a otros coquerellados debían relevar solidariamente a los señores Nieves Morillo y Ramírez Girona de la obligación del pago de hipoteca que afectaba al Apartamento 701 mediante carta de la institución bancaria correspondiente acreditando el relevo de pago, rembolsándoles todo lo pagado en gastos de cierre, depósito, y todas las mensualidades de principal e intereses.

Más adelante, la parte peticionaria recurrió de dicha *Resolución* ante este Tribunal. En ese momento, mediante *Sentencia*, un panel hermano dispuso que, Alturas del Bosque y LEMA respondían solidariamente ante el señor Nieves Morillo, la señora Ramírez Girona y a la Sociedad Legal de Gananciales compuesta por ambos, sobre la totalidad de la obligación correspondiente a la hipoteca que gravaba el Apartamento 701.

Así las cosas, la parte recurrida presentó *Demanda* donde afirmó ser la entidad con derecho a exigir el cumplimiento de lo ordenado mediante la *Resolución* emitida por el DACo. Ante lo anterior, le solicitó al foro *a quo* que ordenara a la parte peticionaria el pago de las sumas adeudadas a favor de Espacio Residential.

Por otro lado, la parte peticionaria presentó una moción de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil. Arguyó que, que la parte recurrida no tenía legitimación activa para instar la *Demanda*. Sostuvo que, Espacio Residential nunca fue reconocida como acreedora de la parte peticionaria, por lo que, aun tomando como ciertas las alegaciones de la *Demanda*, esta no

presentaba una reclamación en contra de la parte peticionaria que justificara la concesión de un remedio.

Luego de varios trámites procesales, innecesarios pormenorizar, el Tribunal de Primera Instancia emitió la *Resolución* cuya revisión nos atiene, donde declaró No Ha Lugar la moción de desestimación instada por la parte peticionaria. Asimismo, el foro *a quo*, expresó que, a pesar de que el remedio se dirigía a los señores Nieves Morillo y Ramírez Girona expresamente, ello no significaba que el reclamo de Espacio Residential fuera inválido o que le despojara de legitimación para la acción instada judicialmente entre todos los demandados.

Según es sabido, los tribunales solo podemos resolver aquellos casos que sean justiciables.[6] Para el ejercicio válido del poder judicial se requiere la existencia de un caso o controversia real.[7] Una de las instancias en las cuales una controversia no es justiciable cuando una de las partes carece de legitimación activa.[8] La legitimación activa es definida como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante".[9] En virtud de dicha doctrina, el demandante busca demostrarle al tribunal que su interés en el pleito es "de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia".[10] Para que se establezca la legitimación activa, el promovente de la causa de acción deberá demostrar lo siguiente: (1) que ha sufrido un daño claro y palpable; (2) que tal daño es real, inmediato y

---

[6] *Hernández, Santa v. Srio. de Hacienda*, supra, pág. 738.
[7] *Íd.*; *Smyth, Puig v. Oriental Bank*, supra, pág. 75.
[8] *Super Asphalt v. AFI y otros*, supra, pág. *Bhatia Gautier v. Gobernador*, supra, págs. 68-69.
[9] *Íd.* Pág. 69.
[10] *Sánchez et al. v. Srio. de Justicia et al.*, supra.

preciso, no abstracto o hipotético; (3) la existencia de una relación causal razonable entre el daño alegado y la acción ejercitada, y (4) que la causa de acción surge al palio de la Constitución o de alguna ley.[11]

Por otro lado, la Regla 10.2(5) de Procedimiento Civil, *supra*, faculta a la parte contra la cual se presente una alegación en su contra a presentar una moción de desestimación cuando deja de exponer una reclamación que justifique la concesión de un remedio.[12] Al momento de considerar una moción de desestimación al amparo de la precitada regla, estamos obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante.[13] Si el Tribunal entiende que no se cumple con el estándar de plausibilidad, se debe desestimar la demanda, pues no debe permitir que proceda una reclamación insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba.[14] Por tanto, para que proceda una moción de desestimación, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor".[15]

Conforme al expediente ante nuestra consideración, existía una relación contractual y ciertas obligaciones entre la parte peticionaria y los señores Nieves Morillo y Ramírez Girona. No surge

---

[11] *Íd.* pág. 371; *Bhatia Gautier v. Gobernador*, supra, pág. 69; *Ramos, Méndez v. García García*, supra, págs. 394-395; *Hernández, Santa v. Srio. de Hacienda*, supra, pág. 739.

[12] *Inmob. Baleares et al. v. Benabe et al.*, pág. 1128.

[13] *Cobra Acquisitions v. Mun. Yabucoa et al*, supra, pág. 396; *Blassino, Reyes v. Reyes Blassino*, supra, pág. 833; *Casillas Carrasquillo v. ELA*, supra, pág. 247; *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, supra, pág. 49.

[14] *Costas Elena y otros v. Magic Sports y otros*, supra, pág. 534; Véase, además, R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6.a ed., San Juan, Ed. LexisNexis, 2017, pág. 307.

[15] *Ortiz Matías et al. v. Mora Development*, supra, pág. 654.

de forma alguna que, en dicho vínculo contractual estuviera involucrado Espacio Residential. De hecho, en la *Resolución* del DACo se reconoce a la parte peticionaria como deudora únicamente de los señores Nieves Morillo y Ramírez Girona. Dicho reconocimiento fue reiterado y confirmado por este Tribunal mediante la *Sentencia* emitida el 30 de abril de 2018 donde ordenó a la parte peticionaria **a pagar a los señores Nieves Morillo y Ramírez Girona** la totalidad de la obligación correspondiente a la hipoteca que grava al Apartamento 701, de acuerdo a los términos y condiciones acordados al otorgar la correspondiente escritura, incluyendo, el reembolso de todo lo pagado en gastos de cierre, depósitos y todas las mensualidades de principal e intereses.

Ante la inexistencia de una relación contractual entre la parte peticionaria y la parte recurrida, esta última carecía de legitimación activa para exigir el cumplimiento del remedio concedido en virtud de la *Resolución* del DACo.

Al ejercer nuestra facultad revisora nos corresponde evaluar la moción de desestimación presentada por la parte peticionaria ante el foro recurrido. En primer lugar, procedemos a tomar como ciertos todos los hechos bien alegados en la *Demanda*, y los consideramos de la forma más favorable a la parte demandante. Basado en dicho ejercicio, concluimos que, dicha reclamación no cumple con el estándar de plausibilidad.[16] Es decir, la *Demanda* no establece una reclamación que justifique la concesión de un remedio a favor de la parte recurrida. Por ende, procede declarar Ha Lugar la moción de desestimación presentada por la parte peticionaria ante el Tribunal de Primera Instancia, al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra.*

---

[16] *Costas Elena y otros v. Magic Sports y otros,* supra, pág. 534.

**IV**

Por los fundamentos que anteceden, se expide el recurso de *certiorari*, se revoca el dictamen recurrido y se desestima la *Demanda* en cuanto a la parte peticionaria.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones. El Juez Pagán Ocasio disiente por entender que, en esta etapa de los procedimientos, es improcedente la desestimación solicitada y concedida por la mayoría de este panel. En su lugar, concedería la oportunidad de llevar a cabo el descubrimiento de prueba, sobre esa causa de acción. Entonces estaría en posición de evaluar las alegaciones de la desestimación de la manera más justa para todas las partes.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones